1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT

9                               EASTERN DISTRICT OF CALIFORNIA

10

11   SUHAIL TUFAIL,                                  No.  2:14-cv-02545-TLN-CMK

12                    Plaintiff,

13             v.                                     **ORDER**

14   DONALD NEUFELD, *et al.*,

15                    Defendant.

16

17         This matter is before the Court on Defendants Donald Neufeld, Jeh Johnson, Eric H.

18   Holder, and Leon Rodriguez's ( "Defendants") motion to dismiss for lack of jurisdiction or, in the

19   alternative, motion for summary judgment.  (ECF No. 6.)  Plaintiff Suhail Tufail ("Plaintiff")

20   opposes the motion and filed a cross motion for summary judgment.  (ECF Nos. 9.)[1]  Defendants

21   oppose Plaintiff's cross motion.  (ECF No. 11.)  For the reasons set forth below, Defendants'

22   motion is DENIED and Plaintiff's motion is GRANTED.

23         **I.  BACKGROUND**

24         Plaintiff, a native and citizen of Pakistan, was granted asylum by the United States

25   Immigration and Naturalization Services ("INS") Asylum Office[2] on July 10, 2001.  (Compl.,

26   _____

     [1]    Plaintiff filed a Motion for Summary Judgment and Opposition as ECF No. 9.  Plaintiff subsequently filed an

27   Opposition as ECF No. 10.  The Court has reviewed both documents and finds them to be identical.  Therefore, the
     Court will hereinafter refer only to Plaintiff's Cross Motion for Summary Judgment and Opposition as ECF No. 9.

     [2]    Pursuant to the *Department of Homeland Security Reorganization Plan, Homeland Security*

28   *Act of 2002, Pub*. L. No. 107-296, 116 Stat. 2135 (2002), 6 U.S.C. §§ 101-557, as of March 1, 2003,

                                              1

1    ECF No.1 at ¶ 1.)  The United States Citizenship and Immigration Services ("USCIS")

2    regulations outline that, after one year of physical presence in the United States as an asylee, a

3    person granted asylum may adjust his status "to that of an alien lawfully admitted for permanent

4    residence."  8 C.F.R. § 1209.2(a).

5          On or about July 22, 2002, Mr. Tufail filed Form I-485, Application for Adjustment of

6    Status ("Form I-485"), pursuant to the Immigration and Nationality Act ("INA") § 209(a), 8

7    U.S.C § 1159(a).  (ECF No. 1 at ¶ 1.)  That application remains pending with the USCIS.  (ECF

8    No. 1 at ¶ 1.)  Plaintiff asserts that he seeks permanent residence status because lawful permanent

9    residents have the privilege of residing and working permanently in the United States, they may

10   travel outside the United States freely and generally are readmitted to the United States

11   automatically, and they may petition to immigrate close family members.  (ECF No. 1 at ¶ 11.)

12   Lawful permanent residents may also apply for naturalization to become a U.S. citizen after five

13   years.  (ECF No. 1 at ¶ 12 (citing INA § 316(a), 8 U.S.C. § 1427(a)).)  Plaintiff asserts that,

14   because lawful permanent residence status is a prerequisite for naturalization, the delay in

15   adjusting his status to lawful permanent residence also delays his eventual naturalization.  (ECF

16   No. 1 at ¶ 12.)

17         Defendants argue that Plaintiff's application has been pending due to "evidence of

18   terrorism-related inadmissibility in his application" and the extended processing that is required

19   for such cases.  (ECF No. 6 at 5.)  Defendants specified that Plaintiff's asylum claim indicated

20   that he "provided material support" to MQM-A, an organization that meets the definition of a

21   Tier III undesignated terrorist organization under 8 U.S.C. § 1182(a)(3)(B)(vi)(III).  (ECF No. 6

22   at 5.)  Because of this involvement, Defendants argue that Plaintiff's application would most

23   likely result in denial.  (ECF No. 6 at 5.)  However the Secretary of the Department of Homeland

24   Security "has discretionary authority to exempt certain Tier III groups or individuals where

25   appropriate" pursuant to the Consolidated Appropriations Act of 2007 ("CAA"), which Congress

26   enacted on December 26, 2007, and which expanded the authority to exempt individuals from

27   _____

28   the INS was abolished and its functions were transferred to the U.S. Citizenship and Immigration
     Services ("USCIS") within the Department of Homeland Security ("DHS").

1    certain terrorism-related inadmissibility grounds.  (ECF No. 6 at 5.)  Defendants state that MQM-

2    A has not been exempted and, in accordance with agency policy, Plaintiff's application is being

3    held "pending future exemption-related guidance."  (ECF No. 6 at 5.)  Defendants state that the

4    applicable statute does not mention a specific time frame within which an application must be

5    adjudicated and that the burden remains with the applicant to demonstrate his admissibility at the

6    time of his application.  (ECF No. 6 at 6.)

7         Plaintiff argues that the USCIS's delay in adjudicating his Form I-485 contravenes its duty

8    to act upon matters presented to it within a reasonable period of time. (ECF No. 1 at ¶ 14 (citing 5

9    U.S.C. § 555(b)).)  Plaintiff alleges that he has suffered, and will continue to suffer, irreparable

10   injury for which he has no adequate remedy at law because he cannot become a lawful permanent

11   resident with the privileges available therein.  (ECF No. 1 at ¶ 16.)  On these grounds, Plaintiff

12   brought suit against Defendants in this Court on October 29, 2014, alleging jurisdiction under 28

13   U.S.C. § 1331, as a civil action arising under the Constitution, laws, or treaties of the United

14   States; 28 U.S.C. § 1361, as a civil action in the nature of mandamus to compel an officer or

15   employee of the United States to perform a duty owed to Plaintiff; 5 U.S.C. § 702, as a challenge

16   to agency action under the Administrative Procedure Act ("APA"); and 28 U.S.C. §§2201 and

17   2202, as a civil action seeking, in addition to other remedies, a declaratory judgment.  (ECF No. 1

18   at ¶ 2.)  Plaintiff states that he has exhausted his administrative remedies.  (ECF No. 1 at ¶ 15.)

19         **II.    LEGAL STANDARD**

20              A.  Jurisdiction

21         The party seeking to invoke the jurisdiction of the federal court has the burden of

22   establishing that jurisdiction exists.  *Ass'n of Am. Medical Colleges v. United States*, 217 F.3d

23   770, 778–79 (9th Cir. 2000).  A Rule 12(b)(1) motion to dismiss for lack of jurisdiction may be

24   either facial, where the inquiry is confined to the allegations in the complaint, or factual, where

25   the court is permitted to look beyond the complaint to extrinsic evidence.  *Wolfe v. Strankman*,

26   392 F.3d 358, 362 (9th Cir. 2004).  When the motion constitutes a factual attack, "no presumptive

27   truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not

28   preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill*

1    *Publ'g Co. v. Gen. Tel. & Elec. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979).  Where the

2    jurisdictional issue is separable from the merits of the case, the district court may hear evidence

3    regarding jurisdiction and rule on that issue prior to trial, resolving factual disputes where

4    necessary. *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983).

5                                B.  Summary Judgment under Rule 56

6            Summary judgment is appropriate when the moving party demonstrates no genuine issue

7    as to any material fact exists, and therefore, the moving party is entitled to judgment as a matter

8    of law.  Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under

9    summary judgment practice, the moving party always bears the initial responsibility of informing

10   the district court of the basis of its motion, and identifying those portions of "the pleadings,

11   depositions, answers to interrogatories, and admissions on file together with the affidavits, if

12   any," which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*

13   *Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden

14   of proof at trial on a dispositive issue, a summary judgment motion may properly be made in

15   reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file."

16   *Id.* at 324 (internal quotations omitted).  Indeed, summary judgment should be entered against a

17   party who does not make a showing sufficient to establish the existence of an element essential to

18   that party's case, and on which that party will bear the burden of proof at trial.  *Id.* at 322.

19           If the moving party meets its initial responsibility, the burden then shifts to the opposing

20   party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

21   *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585−87 (1986); *First Nat'l Bank v. Cities Serv.*

22   *Co.*, 391 U.S. 253, 288−289 (1968).  In attempting to establish the existence of this factual

23   dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

24   tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

25   support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

26   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

27   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

28   the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

4

1   the nonmoving party.  *Id.* at 251−52.

2          In the endeavor to establish the existence of a factual dispute, the opposing party need not

3   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

4   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

5   trial."  *First Nat'l Bank*, 391 U.S. at 288−89.  Thus, the "purpose of summary judgment is to

6   'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

7   trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963

8   amendments).

9          In resolving the summary judgment motion, the court examines the pleadings, depositions,

10   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

11   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305−06 (9th Cir. 1982).  The evidence

12   of the opposing party is to be believed, and all reasonable inferences that may be drawn from the

13   facts placed before the court must be drawn in favor of the opposing party.  *Anderson*, 477 U.S. at

14   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

15   obligation to produce a factual predicate from which the inference may be drawn.  *Richards v.*

16   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244−45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th

17   Cir. 1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing

18   party "must do more than simply show that there is some metaphysical doubt as to the material

19   facts."  *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational

20   trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Id.* at 587.

21          **III.   ANALYSIS**

22                 A.   Motion to Dismiss for Lack of Jurisdiction

23                        i.      *8 U.S.C. § 1252(a)(2)(B)(ii)*

24          Defendants argue that the Court lacks jurisdiction in this matter pursuant to 8 U.S.C. §

25   1252(a)(2)(B)(ii).  (ECF No. 6 at 7.)  That statute states that no court shall have jurisdiction to

26   review:

27   / / /

28   / / /

. . . any other decisions or action of the Attorney General or Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii).  Defendants argue that the Ninth Circuit, in *Spencer Enterprises, Inc. v. U.S.*, 345 F.3d 683, 689 (9th Cir. 2003), held that this statute specifically applies to discretionary acts of the INA/USCIS.  (ECF No. 6 at 7.)  Defendants assert that the adjudicatory hold on Plaintiff's application is necessary to allow the government to determine whether Plaintiff is eligible for the terrorism-related inadmissibility exemption under 8 U.S.C. § 1252(d)(3)(B)(i).  (ECF No. 6 at 11.)  Therefore, Defendants reason, their authority to grant adjustment of status is "unquestionably discretionary" and the Court is prohibited from reviewing USCIS's decision to hold Plaintiff's adjustment application.  (ECF No. 6 at 8.)

Defendants are correct that 8 U.S.C. § 1252(a)(2)(B)(ii) bars this Court from reviewing a final agency decision on an adjustment application.  However, the statute does not prevent review of an agency's unreasonable delay in making a decision.  According to *Kucana v. Holder*, 558 U.S. 233, 246–47 (2010), "both clauses [of § 1252(a)(2)(B)] convey that Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute."  *See also id.* at 839 ("Any lingering doubt about the proper interpretation of § 1252(a)(2)(B) would be dispelled by the familiar principle of statutory construction: the presumption favoring judicial review of administrative action."); *Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004) ("§ 1252(a)(2)(B)(ii) precludes jurisdiction only over decisions as to which discretionary authority is 'specified' by statute, not all discretionary decisions.").

Here, the decision Plaintiff asks the Court to review is not the grant or denial of his application for adjustment; rather, it is the refusal to take any action on that application. While the Secretary has discretion to decide the outcome of an adjustment application, the authority to not act on an application is not conferred by any statute.  The Government's own authority recognizes this distinction:

Based on the narrow construction to be given the jurisdiction-stripping provision of the statute, and its language precisely limiting the discretion granted, the Court therefore finds that 8 U.S.C. § 1252(a)(2)(B)(ii) does not deprive the Court of jurisdiction to hear an allegation that the determination of an application for adjustment of status has been unlawfully withheld. While the ultimate decision to grant or deny an application for adjustment of status is unquestionably discretionary, there exists a non-discretionary duty to act on and process the application.

*Dong v. Chertoff*, 513 F. Supp. 2d 1158, 1165 (N.D. Cal. 2007). Thus, a failure to act on an adjustment application falls within the APA's default rule: "With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).[3]

### *ii.   8 U.S.C. § 1182(d)(3)(B)(i)*

Defendants further argue that its decision to exempt Plaintiff from inadmissibility under 8 U.S.C. § 1182(a)(3)(B)(i) is a discretionary act which is not subject to judicial review. Aliens who have engaged in terrorist activity are deemed inadmissible and ineligible to receive visas to enter the United States pursuant to 8 U.S.C. § 1182(a)(3)(B)(i)(I). However, the statute provides an exception to this rule:

The Secretary of State, after consultation with the Attorney General and the Secretary of Homeland Security, or the Secretary of Homeland Security, after consultation with the Secretary of State and the Attorney General, may determine in such Secretary's sole unreviewable discretion that subsection (a)(3)(B) shall not apply with respect to an alien within the scope of that subsection or that subsection (a)(3)(B)(vi)(III) shall not apply to a group within the scope of that subsection.... Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to review such a determination or revocation except in a proceeding for review of a final order of removal pursuant to section 1252 of this title, and review shall be limited to the extent provided in section 1252(a)(2)(D).

8 U.S.C. § 1182(d)(3)(B)(i).

Defendants argue that "the procedure for creating a terrorism-related inadmissibility

---

[3]    The Government relies on the Ninth Circuit's decision in *Hassan v. Chertoff*, 543 F.3d 564 (9th Cir. 2008), arguing that it compels the application of 8 U.S.C. § 1252(a) (2)(B)(ii) in this case.  (ECF No. 8 at 8.) The Government cites the court's reasoning in *Hassan* that, "Because the government denied Hassan's application for adjustment, in part, as a matter of discretion, the district court lacked jurisdiction to review that claim." 534 F.3d at 566. The reliance is misplaced, as *Hassan* dealt with the denial of an application for adjustment, an action which satisfies the conditions for preclusion of review, not the decision to take no action.

exemption under 8 U.S.C. § 1182(d)(3)(B)(ii) is a deliberative one that Congress did not intend to occur quickly."  (ECF No. 6 at 9.)  Therefore, Defendants reason, "Congress intended that the exemption determination be made via agency action rather than through judicial oversight." (ECF No. 6 at 9.)

The Court finds a similar flaw in Defendants' reliance on this statute as it does with 8 U.S.C. § 1252(a)(2)(B)(ii).   8 U.S.C. § 1182(d)(3)(B)(ii) only precludes judicial review of decisions to create exemptions to terrorism-related inadmissibility. Here, Plaintiff does not challenge an exemption. Instead, Plaintiff challenges the lack of decision by USCIS as to whether an exemption should be made.  "Nothing in the statute governing adjustment of an asylee's status, 8 U.S.C. § 1159(b), or the statute governing exemptions for terrorism-related inadmissibility, 8 U.S.C. 1182(d)(3)(B)(i), vests the Secretary of Homeland Security or the Attorney General with the discretion to place applications for adjustment on indefinite hold without being subjected to judicial review." *Khan v. Scharfen*, No. 08-1398 SC, 2009 WL 941574, at *6 (N.D. Cal. Apr. 6, 2009).  For these reasons, the Court finds that it has subject-matter jurisdiction and DENIES Defendants' motion to dismiss Plaintiff's complaint for lack of jurisdiction.

## B. Motion for Summary Judgment

Plaintiff's complaint alleges two causes of action.  Plaintiff seeks relief in the form of mandamus pursuant to 28 U.S.C. § 1361 to compel Defendants to adjudicate his application. (ECF No. 1 at ¶¶ 17–18.)  Plaintiff further alleges that Defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*, by failing to make a determination on his application within a reasonable time.  (ECF No. 1 at ¶¶ 19–22.)[4]

Defendants move for summary judgment on Plaintiff's complaint, arguing that, pursuant to the six-factor test adopted by the Ninth Circuit for determining when an agency delay is

---

[4]    Plaintiff seeks relief under both the the Mandamus Act (Count I), 28 U.S.C. § 1361, and the APA (Count II) in his Complaint, but only addresses the APA in his briefing.  Technically, the availability of relief under the APA precludes Plaintiff from seeking a writ of mandamus, which is only available when no other remedy exists. *Mt. Emmons Mining Co. v. Babbitt*, 117 F.3d 1167, 1170 (10th Cir. 1997).  Therefore, because the Court is granting summary judgment on Plaintiff's claim under the APA, his second claim under the Mandamus Act is dismissed as moot.  *Dong v. Chertoff*, 513 F. Supp. 2d at 1161-62 ("Where the relief the plaintiff is seeking is  identical under either the APA or the mandamus statute, proceeding under one as opposed to the other is not significant.")

unreasonable, the Court should determine that Defendants' delay in adjudicating Plaintiff's application is reasonable.  (ECF No. 6 at 11.)  Plaintiff also moves for summary judgment, arguing that the 13 year delay in adjudication of his application is unreasonable.  (ECF No. 9 at 14.)

The APA "permits a citizen suit against an agency when an individual has suffered 'a legal wrong because of agency action' or has been 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.'"  *Rattlesnake Coalition v. U.S. Envtl. Prot. Agency*, 509 F.3d 1095, 1103 (9th Cir. 2007) (quoting 5 U.S.C. § 702).  5 U.S.C. § 706(1) authorizes a court to "compel agency action unlawfully withheld or unreasonably delayed."  To be granted relief under Section 706(1), a plaintiff must first show that an agency delayed or withheld a discrete action that the agency was legally required to take.  *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) ("a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*" (emphasis in original)).  A plaintiff must then further demonstrate that the agency unreasonably delayed or unlawfully withheld processing its decision.  *See* 5 U.S.C. § 555(b) ("with due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it"); 5 U.S.C. § 706(1).

Here, the parties agree that USCIS has placed Plaintiff's application on hold and has therefore delayed a determination on the application.  The Court has already concluded that USCIS has a nondiscretionary duty to adjudicate Plaintiff's application within a reasonable period of time.  *See supra* Section III.A.  Therefore, the Court need only determine whether the delay in adjudication of Plaintiff's application is reasonable.  To do so, the Court applies what are known as the *TRAC* factors:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"[;] (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason [;] (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake [;] (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority[;] (5) the court should also take into account the nature and extent of the interests prejudiced by the delay[;] and (6) the court need not "find any impropriety lurking

behind agency lassitude in order to hold that agency action is unreasonably delayed."

*Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 507 n.7 (9th Cir. 1997) (quoting *Telecomms. Research & Action v. F.C.C.*, 750 F.2d 70, 79–80 (D.C.Cir. 1984) ("*TRAC*")) (modifications in original).

### i.   *Factor 1: Rule of Reason*

Defendants have a duty to adjudicate Plaintiff's application for adjustment within a reasonable amount of time. *Kousar v. Mueller*, 549 F. Supp. 2d 1194, 1198 (N.D. Cal. 2008); *Soneji v. Dep't of Homeland Sec.*, 525 F. Supp. 2d 1151, 1156 (N.D. Cal. 2007); *Alibeik v. Chertoff*, No. C-07-01938 EDL, 2007 WL 4105527, at *5 (N.D. Cal. Nov. 16, 2007). "What constitutes an unreasonable delay in the context of immigration applications depends to a great extent on the facts of the particular case." *Gelfer v. Chertoff*, No. C06-06724 WHA, 2007 WL 902382, at *2 (N.D. Cal. Mar. 22, 2007) (quoting *Yu v. Brown*, 36 F. Supp. 2d 922, 934 (D.N.M. 1999)).

On or about July 22, 2002, Plaintiff filed an adjustment application with USCIS.  (ECF No. 1 at ¶ 13.)  Plaintiff's application has now been pending for almost 14 years.  Plaintiff further argues that the delay is actually an indefinite one because USCIS has yet to set a date for adjudication of this application.  (ECF No. 9 at 26.)  Plaintiff asserts that Defendants are intentionally not adjudicating his application because USCIS has issued a policy memorandum directing that all applications of this type should be put on administrative hold.  (ECF No. 9 at 26.)  Therefore, Plaintiff argues that Defendants' actions do not meet the rule of reason requirement.

Defendants argue that the Court should find that the rule of reason factor weighs in their favor because the memorandum issued by USCIS instructed adjudicators to put on hold certain adjustment applications that "could potentially benefit from a future exercise by the Secretary" of her authority to exempt those applications otherwise subject to terrorist-related inadmissibility. (ECF No. 6 at 15.)  Defendants argue that putting adjudication of Plaintiff's application on hold is consistent with the USCIS memorandum and inures in Plaintiff's interest because his application

1  would otherwise be denied.  (ECF No. 6 at 15.)  Defendants further argue that "the exemption

2  process is not a quick one" because it requires consultation with the Secretary of State, the U.S.

3  Attorney General, and the Secretary of Homeland Security, as well as consultation with various

4  law enforcement and intelligence agencies.  (ECF No. 6 at 15.)

5       The Court is cognizant that the exemption process is a careful and time-consuming one.

6  However, Defendants' analysis does not explain how these concerns would be undermined by

7  expediting the adjudication of Plaintiff's application.  As Plaintiff points out "the mere fact that

8  the USCIS's official policy is not to adjudicate applications like Mr. Tufail's does not mean that

9  there is a 'rule of reason' governing the policy."  (ECF No. 9 at 26.)  The APA is not intended to

10  permit agencies to define the reasonability of their actions by issuing their own memoranda.

11  Defendants' decision to put the adjudication of Plaintiff's application on hold indefinitely does

12  not weight in favor of the Court finding this delay reasonable.  *Mugomoke v. Curda*, No. 2:10-

13  CV-02166 KJM, 2012 WL 113800, at *7 (E.D. Cal. Jan. 13, 2012) ("But for defendants to hold

14  the application indefinitely in case they might, at some unspecified point in the future, consider an

15  exemption does not constitute a "rule of reason" that allows this court to find the delay

16  reasonable.")  While the length of the delay alone is not dispositive, Defendants do not allow a

17  fact-specific inquiry because they provide no analysis to indicate why a delay is required in this

18  instance and have made no showing that they might adjudicate Plaintiff's application at any

19  particular time in the future.  *Qureshi v. Napolitano*, No. C-11-05814-YGR, 2012 WL 2503828,

20  at *4 (N.D. Cal. June 28, 2012)

21       Moreover, the Court finds that the length of the delay is excessive.  In their motion for

22  summary judgment, Defendants argue, "[a] number of district courts … have gone on to hold that

23  the delay is reasonable in light of the statute and policy memorandum."  (ECF No. 11 at 4.)

24  However, Defendants primarily cite to cases where the court has found a four, five, or six year

25  delay reasonable.  (ECF No. 11 at 4.)  Defendants cite to only one case where a district court in

26  Minnesota found a twelve year delay to be reasonable, but a closer reading of that case indicates

27  that, at the time the order was written, the government had only had eight months to assess the

28  nature of the defendant's involvement in the terrorist-related organization.  *Oljirra v. Mayorkas*,

No. 12-CV-0994 PJS/JSM, 2013 WL 1490261, at *4 (D. Minn. Apr. 11, 2013).  Alternatively, a number of district courts have found long delays in adjudication to be unreasonable.  *See Qureshi*, 2012 WL 2503828, at *5 (finding five year delay unreasonable); *Ahary v. Curda*, No. 11-02992 GEB, 2012 WL 1641411 (E.D. Cal. May 9, 2012) (finding an 11 year delay unreasonable); *Mugomoke*, 2012 WL 113800 (finding a seven year delay unreasonable); *Islam v. Heinauer*, 32 F. Supp. 3d 1063 (N.D. Cal. Mar. 7, 2014) (finding that a five year delay was unreasonable); *Al Karim v. Holder*, No. 08–cv–00671–REB, 2010 WL 1254840, at *4 (D. Colo. Mar.29, 2010) (eight-year delay unreasonable); *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 936 (D. Minn. 2011) (thirteen-year delay unreasonable); *Al Shamsawi v. Holder*, No. 2:10–CV–194 CW, 2011 WL 1870284, at *4 (six-year delay unreasonable).  While length of delay alone is not dispositive to the inquiry, the fact remains that an almost 14 year delay weighs substantially against a finding of reasonability.

The Court finds that Defendants have failed to put forth specific reasoning for the delay in adjudication of Plaintiff's application and that, as compared to other cases similar to Plaintiff's, the extent of delay in adjudication is extensive.  Therefore, the Court finds that the first factor weighs in favor of the Plaintiff.

### ii.   Factor 2: Congressionally Mandated Timetable

Both parties agree that there is no specific timetable mandated by Congress for the adjudication of adjustment applications.  (ECF No. 6 at 12 & ECF No. 9 at 28.)  "The agency therefore must adjudicate [Plaintiff's] application in a reasonable amount of time."  *Mugomoke*, 2012 WL 113800, at *7 (dispensing with the second factor where parties agree there is no timetable for the review of adjustment applications); *see also*, *TRAC*, 750 F.2d at 80 ("[W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason.")  Therefore, the Court does not consider this *TRAC* factor.

### iii.   Factors 3 & 5: Impact on Health and Human Welfare
### & Prejudice of Delay

The Court will address the third and fifth *TRAC* factors together by assessing the injury

1    caused to Plaintiff by indefinite delay of adjudication. *See Mugomoke*, 2012 WL 113800, at *8.

2    Defendants argue that USCIS is exercising its discretion under the law in favor of Plaintiff, whose

3    application would be denied if not granted future exemption. (ECF No. 6 at 16.) Defendants

4    further argue that the government's interests in national security and the issuance of potential

5    exemptions outweigh Plaintiff's interest in adjudication. (ECF No. 6 at 16–17.)

6        Plaintiff responds with two arguments. First, Plaintiff explains the disadvantages of his

7    current status as an asylee and recounts the numerous advantages of receiving lawful permanent

8    resident status. (ECF No. 9 at 29.) Plaintiff further states that, even if his application was denied,

9    he would be in a better position than if his application remained on hold because he would be able

10    to seek judicial review of his application and would be permitted to reapply in the future. (ECF

11    No. 9 at 27.)

12        The parties appear to be in agreement that USCIS would deny Plaintiff's application if a

13    determination was made at this time. (ECF No. 11 at 5.) Therefore, the Court does not consider

14    Plaintiff's arguments regarding the benefits of lawful permanent resident status to weigh in his

15    favor, as it seems certain he will not receive that status. Nor can the Court find in favor of

16    Defendants, who argue that placing the application on hold delays Plaintiff's denial. First, as

17    Plaintiff points out, he does not need to be protected from a denial because he would be permitted

18    to maintain his asylee status and could simply reapply in the future. (ECF No. 9 at 27.) More

19    importantly, however, the Court finds that Plaintiff is damaged by this unreasonable delay and the

20    insecurity of his immigration status. *See Kashkool v. Chertoff*, 553 F. Supp. 2d 1131, 1145 (D.

21    Ariz. 2008) (finding that economic and human welfare interests are implicated in the delay in

22    processing an I–485 adjustment application); *Al Karim*, 2010 WL 1254840, at *4 ("Plaintiff

23    evidently understands that his application may be denied, but the consequences of the indefinite

24    and unreasonable delay in adjudication of his application are assuredly equally as negative.").

25    Therefore, the Court finds that this factor weighs in favor of Plaintiff.

26            *iv. Factor 4: Agency Activities*

27        The Ninth Circuit instructs that "the court should consider the effect of expediting delayed

28    action on agency activities of a higher or competing priority." *Independence Mining Co., Inc. v.*

1   *Babbitt*, 105 F.3d at 507 n.7.   Defendants argue that Plaintiff's "demand for immediate

2   adjudication of his adjustment application directly challenges the agency's process for exercises

3   of discretionary exemption authority."  (ECF No. 6 at 17.)  Plaintiff responds, and the Court

4   concurs, that Defendants "are conflating their non-discretionary duty to adjudicate the

5   applications within a reasonable period of time with the discretionary decision to apply an

6   exemption…."  (ECF No. 9 at 32.)  The Court has determined that USCIS is lawfully required to

7   adjudicate Plaintiff's application and that the Court is permitted to compel action under the APA.

8   "If the only effect of expediting the application is the loss of an authority that the court has

9   determined is *ultra vires*, this factor does not militate in [Defendants'] favor."  *Mugomoke*, 2012

10   WL 113800, at *9.

11   *v.   Factor 6: Impropriety or Bad Faith*

12   Plaintiff does not allege any impropriety or bad faith here and the Court finds no grounds

13   to determine any.  Regardless, "the court need not 'find any impropriety lurking behind agency

14   lassitude in order to hold that agency action is unreasonably delayed.'"  *TRAC*, 750 F.2d at 80

15   (D.C. Cir. 1984) (citing *PCHRG v. FDA*, 740 F.2d 21, 34 (D.C. Cir. 1984)).  Therefore, the Court

16   does not consider this factor in its determination.

17   *vi.   Conclusion*

18   The APA instructs that "within a reasonable time, each agency shall proceed to conclude a

19   matter presented to it."  5 U.S.C. § 555.  The law further instructs federal courts to "compel

20   agency action unlawfully withheld or unreasonably delayed…."  5 U.S.C. § 706(1).  Summary

21   judgment should be entered against a party who does not make a showing sufficient to establish

22   the existence of an element essential to that party's case, and on which that party will bear the

23   burden of proof at trial.  *Celotex Corp.*, 477 U.S. 322.

24   Here, the Court has applied the *TRAC* factors as instructed by the Ninth Circuit and finds

25   that a balance of those factors indicates that USCIS unreasonably delayed or unlawfully withheld

26   processing its decision.  A delay of over 14 years in processing Plaintiff's adjustment application

27   is presumptively unreasonable.  Defendants have not provided sufficient support with respect to

28   any of the *TRAC* factors for this Court to find such a delay permissible under the APA.

Therefore, the Court hereby GRANTS IN PART Plaintiff's motion for summary judgment.

## IV.   CONCLUSION

For the reasons set forth above, the Court finds as follows:

1. Defendants' Motion to Dismiss for Lack of Jurisdiction, *in the alternative*, Motion for Summary Judgment (ECF No. 6) is **DENIED;**

2. Plaintiff's Motion for Summary Judgment (ECF No. 9) is **GRANTED** insofar as it seeks adjudication of his I–485 adjustment application under the APA (Count II);

3. Plaintiff's claims for adjudication of his I–485 adjustment application under the Mandamus Act (Count I) is **DISMISSED AS MOOT;**[5]

4. The USCIS **SHALL ADJUDICATE** Plaintiff's I–485 adjustment application within thirty (30) days of the date of this order;

5. Within fourteen (14) days of the adjudication of Plaintiff's I–485 adjustment application, Defendants **SHALL FILE** a notice with the Court reporting the outcome of the adjudication; and

6. Within ten (10) days of the date of this Order, Plaintiff **SHALL FILE** a notice specifying the claims that remain in this lawsuit and suggesting what further action, if any, is anticipated, requested, or required in this matter.


IT IS SO ORDERED.


Dated: April 19, 2016

Troy L. Nunley
United States District Judge

---

[5]      In his prayer for relief, Plaintiff also asks this Court to declare Defendants' failure to adjudicate Plaintiff's Form I-485 adjustment application to be a violation of INA § 209(a), 8 U.S.C. § 1159(a), 8 C.F.R. § 1209.2, INA § 245(i), and 8 U.S.C. §1255(i).  (ECF No. 1 at 6.)  Neither party offers analysis on these issues and the Court declines to offer a ruling on these points.